NONPROFIT LEGAL SERVICES OF UTAH
Aaron C. Garrett, #12519
Mary Dewey, #15978
177 East 900 South, Suite 202
Salt Lake City, Utah 84111
Tel: (385) 419-4111
Fax: (801) 401-3504
aaron@nonprofitlegalservices.com
mdewey@nonprofitlegalservices.com
*Attorneys for Plaintiff Dennis Bateman*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DENNIS BATEMAN**, <br><br> Plaintiff, <br><br> v. <br><br> **NEXSTAR MEDIA GROUP, INC.** <br><br> Defendant. | **COMPLAINT** <br><br> Case No. _____ <br><br> Judge _____ <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Dennis Bateman, by and through undersigned counsel of record, respectfully submits this Complaint and complains against Nexstar Media Group, Inc., as follows:

**PARTIES, VENUE, AND JURISDICTION**

1.      Plaintiff Dennis Bateman ("Mr. Bateman"), is an individual residing in Salt Lake County, Utah.

2.      Defendant Nexstar Media Group, Inc. ("Channel 4 News" or sometimes "Nextar"), is a Delaware Corporation doing business in Salt Lake County, Utah.

3. Venue is appropriate under 28 U.S.C. § 1391(b) because the defendants all reside within this district or because a substantial part of the events or omissions giving rise to the claims occurred within this district.

4. Mr. Bateman initially filed a charge of discrimination in this matter with the Utah Labor Commission and the EEOC, which issued him a Notice of Right to Sue. He received this Notice of Right to Sue on or about August 7, 2018, and timely filed this action within 90 days.

5. Jurisdiction in this Court is proper as the claims herein arise under Federal law, including the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101, et seq.

6. The Court has personal jurisdiction over these parties because the events upon which this Complaint is based took place primarily within Salt Lake County, Utah.

## GENERAL ALLEGATIONS

7. Mr. Bateman is disabled as that term is understood under the ADA, in that he is a left leg, below-knee amputee, a physical impairment that substantially limits one or more major life activities, such as walking, standing, lifting, and bending.

8. Mr. Bateman also suffers from Post-Traumatic Stress Disorder, causing severe insomnia, a mental impairment that substantially limits one or more of his major life activities, such as sleeping.

9. Mr. Bateman also suffers from a Cholesteatoma of the left ear that required extensive surgery, resulting in significant hearing loss and a speech impediment, a physical impairment that substantially limits one or more of his major life activities, such as hearing and speaking.

10. Nexstar is an employer which, under information and belief, employs more than 501 people.

11. On or about December 6, 2014, Mr. Bateman was hired as a photojournalist, i.e. cameraman, for Channel 4 News.

12. Mr. Bateman is a qualified individual with a disability, in that he was able to perform all of the essential duties of the photojournalist position, with or without a reasonable accommodation.

13. After the beginning of his employment, Mr. Bateman's supervisor, Todd Peterson ("Mr. Peterson"), the chief photographer, sent around an email informing the photojournalists that he would be changing the schedules, and that anyone with concerns or unavailabilities should contact him.

14. Thereafter, Mr. Bateman requested the reasonable accommodation that he not be required to work back-to-back, or "turnaround" shifts, where a photojournalist works in the evening on one day and then early the next day, and also requested to have two consecutive days off.

15. Mr. Bateman's disability required that he have more rest between shifts than was permitted on a typical turnaround shift and the two consecutive days off were important for this reason as well.

16. Mr. Bateman made his accommodation request in writing and also in person with Mr. Peterson.  Mr. Bateman explained to Mr. Peterson that he suffered from PTSD and insomnia, which necessitated the accommodation.

17. Mr. Bateman also explained that while both requests would be appreciated, it was particularly important that he not be required to work turnaround shifts.

18. His request was reasonable in that it enabled him to perform the essential functions of the job of photojournalist without negatively impacting Channel 4 News' business operations.

19. Acknowledging the same, Channel 4 News granted this request and permitted Mr. Bateman to work his position without having to work turnaround shifts.

20. However, shortly thereafter Mr. Peterson began scheduling Mr. Bateman to work turnaround shifts.

21. Mr. Bateman approached Mr. Peterson and again requested that he not be required to work turnaround shifts due to his disability, but Mr. Peterson refused, and continued to schedule Mr. Bateman for turnaround shifts, notwithstanding that Channel 4 News had previously granted the request.

22. Upon information and belief, Mr. Peterson specifically targeted Mr. Bateman to work turnaround shifts after learning of his request, in an effort to force him to quit.

23. Mr. Bateman then complained to Human Resources that Mr. Peterson was not complying with his request for a reasonable accommodation, but his complaints were ignored.

24. Immediately after Mr. Bateman reported Mr. Peterson's conduct to Human Resources, Mr. Peterson retaliated against Mr. Bateman for making this report.

25. Among other things, Mr. Peterson began to make inappropriate and unwarranted write-ups concerning Mr. Bateman's work performance, when Mr. Bateman's work performance was equal to or better than the other photojournalists.

26. In fact, Mr. Bateman often went above and beyond the call of duty. This made the other photojournalists jealous and resentful of him, particularly because he was able to do more than them despite his disability.

27. Mr. Peterson and other Channel 4 News employees, whose identities will be revealed through discovery, continued to harass, annoy, retaliate, and discriminate against Mr. Bateman based on his disability in any number of ways, including but not limited to the following:

    a. Mr. Bateman's camera equipment was sabotaged by other employees, which was tacitly or explicitly permitted by Mr. Peterson;

    b. Mr. Bateman was written up for supposed infractions and policy violations for which other non-disabled employees were not sanctioned. For example, Mr. Bateman was written up for missing a call while he was on-call, and other non-disabled employees were not written up under similar circumstances.

    c. Mr. Bateman was written up for accidentally breaking a piece of equipment, and other non-disabled employees were not written up under similar circumstances;

    d. Mr. Bateman was denied job opportunities and the chance to be the photographer on the best assignments, such as a Parris RV spot that traveled throughout Utah;

    e. Mr. Bateman was singled out for dress code violations;

    f. Other photographers were given awards and commendations for work that Mr. Bateman performed;

        g.       Channel 4 News targeted Mr. Bateman for unnecessary and unwarranted scrutiny and discipline;

        h.       Channel 4 News continually ignored his complaints and requests concerning his treatment at the company, and permitted other employees to act in an abusive or inappropriate manner toward him; and

        i.       Other unlawful acts that will be revealed through discovery.

28.      At some point toward the end of his employment, Mr. Bateman was falsely accused of being intoxicated at work.

29.      Upon information and belief, this accusation was made based upon the manner in which Mr. Bateman walks due to the fact that he has a prosthetic leg.

30.      Thereafter, Mr. Peterson and George Severson ("Mr. Severson"), the News Director at Channel 4 News, placed Mr. Bateman on probation for 30 days with the full intention of terminating him at the conclusion of the probation, as demonstrated by the fact that they provided Mr. Bateman with no explanation of how he could successfully complete the probationary period.

31.      The foregoing illegal treatment was a part of Channel 4 News' intentional efforts to make Mr. Bateman's job so unbearable that he would quit.

32.      The conditions created by Channel 4 News were so difficult that a reasonable person in Mr. Bateman's shoes would feel forced to resign.

33.      As a result of these conditions, Mr. Bateman resigned his position, having been constructively discharged from his position in violation of federal antidiscrimination law.

34. Mr. Bateman has suffered substantial damages as a result of Channel 4 News' illegal conduct, to wit:

    a. Lost wages from being illegally terminated;

    b. Lost opportunities for advancement, raises, and promotions;

    c. Diminished future wages as a result of losing his job and not being able to find subsequent commensurate compensation;

    d. Front pay;

    e. Severe emotional distress, and pain and suffering;

    f. Attorney fees; and

    g. Due to the egregious nature of Channel 4 News' intentionally discriminatory conduct, Mr. Bateman is entitled to compensatory, punitive, and all other types damages to the fullest extent provided by law.

## FIRST CAUSE OF ACTION
### Unlawful Termination under the ADA

35. Mr. Bateman incorporates the preceding paragraphs as if stated verbatim herein.

36. For the reasons stated herein, Mr. Bateman is a disabled person within the meaning of the ADA.

37. Mr. Bateman is qualified to perform the essential functions of the job of photojournalist, with or without a reasonable accommodation.

38. Channel 4 News terminated Mr. Bateman's employment based on and because of his disability, or under circumstances which give rise to an inference that the termination was based on his disability, in violation of the ADA.

39. Mr. Bateman has suffered significant damages as a result of this unlawful discrimination, in an amount to be proven at trial but in no instance less than $300,000.00.

## SECOND CAUSE OF ACTION
### Unlawful Retaliation in Violation of the ADA

40. Mr. Bateman incorporates the preceding paragraphs as if stated verbatim herein.

41. By reporting Mr. Peterson's conduct to human resources and as otherwise described in this Complaint, Mr. Bateman engaged in activity protected under the ADA.

42. Mr. Bateman was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity.

43. There is a causal connection between Mr. Bateman's protected activity and the adverse employment action, including that they occured very close in time to one another.

44. Mr. Bateman has suffered significant damages as a result of this unlawful discrimination, in an amount to be proven at trial but in no instance less than $300,000.00.

WHEREFORE, Mr. Bateman prays for relief as follows:

1. On all of his causes of action, for back pay, front pay, an order or injunction reinstating him to his prior position, special damages, punitive damages, and compensatory damages, in an amount to be proven at trial.

2.	On all causes of action, attorney fees, costs of suit, and any other relief the Court deems equitable and warranted under the circumstances.

3.	For damages in an amount to be proven at trial, but in no instance less than $300,000.00.

## JURY DEMAND

Mr. Bateman demands a jury trial on all claims so triable.

DATED this 18th day of October, 2018.

        NONPROFIT LEGAL SERVICES OF UTAH


          /s/ Aaron C. Garrett
        Aaron C. Garrett
        Mary Dewey
        *Attorneys for Plaintiff Dennis Bateman*

Plaintiff's Address:
1526 W. Oxbow Circle #10
Taylorsville, Utah 84123