IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DENNIS BATEMAN,<br><br>Plaintiff,<br><br>v.<br><br>NEXSTAR MEDIA GROUP, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [18] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00815-DBB-JCB<br><br>District Judge David Barlow |

Defendant Nexstar Media Group, Inc. (Nexstar) moves for summary judgment[1] on Plaintiff Dennis Bateman's claims for unlawful termination and unlawful retaliation under the Americans with Disabilities Act (ADA) pursuant to Federal Rule of Civil Procedure 56.[2] Having reviewed the parties' briefing, the court concludes the motion may be resolved without oral argument. *See* DUCivR 7-1(f).

## FACTS

Bateman is an individual with disabilities.[3] He is a left-leg, below-knee amputee;[4] has post-traumatic stress disorder, which causes him insomnia;[5] and has a cholesteatoma of the left ear, which required surgery resulting in hearing loss and a speech impediment.[6]

---

[1] Nexstar Media Group, Inc.'s Motion for Summary Judgment against Dennis Bateman (Motion), ECF No. 18, filed January 24, 2020.

[2] *See id.* at 1.

[3] *See* Motion at 29 n.11.

[4] Complaint, ECF No. 2, filed October 18, 2018, at ¶ 7.

[5] *Id.* at ¶ 8.

[6] *Id.* at ¶ 9.

Bateman began his employment as a photojournalist with a news station Nexstar owns in December 2014.[7] In January 2015, due to staffing changes, the station needed to adjust employee schedules.[8] Bateman requested that his schedule not include any "turnarounds" (late shift one day and early shift the following day), and that he have two consecutive days off.[9] Bateman's supervisor gave Bateman a schedule in February or March 2015,[10] which gave him two consecutive days off, including Sundays based on the supervisor's understanding that Bateman enjoyed watching NASCAR, but had him working one turnaround shift.[11] Bateman complained to human resources in July 2015 that he had been denied a requested accommodation.[12]

Based on Bateman's complaint, in early August 2015, Bateman's supervisor met with him to discuss his concerns with his schedule.[13] Bateman's supervisor followed up this meeting with a written letter dated August 4, 2015.[14] In this letter, Bateman's supervisor addressed Bateman's concerns about his schedule, including explaining why there was a need for Bateman to work a turnaround shift, but also expressed his "appreciation for the positive efforts [Bateman had] made in the news department" and that he was "pleased with many aspects of [Bateman's] work and the effort [he was] putting forth."[15]

---

[7] *Id.* at ¶ 11.

[8] Motion Exhibit G, ECF No. 18-8, filed January 24, 2020.

[9] Complaint at ¶ 14.

[10] Motion at 9; Defendant's Reply in Support of Motion for Summary Judgment (Reply), ECF No. 27, filed March 20, 2020, at 16.

[11] Motion Exhibit I, ECF No. 18-10, filed January 24, 2020; Reply at 4 n.1.

[12] *Id.* Exhibit H, ECF No. 18-9, filed January 24, 2020; Opposition to Motion for Summary Judgment (Opposition), ECF No. 22, filed February 28, 2020, Exhibit 5, ECF No. 22-5, filed February 28, 2020, at ¶ 16.

[13] Motion Exhibit AA, ECF No. 18-28, filed January 24, 2020, at ¶ 10.

[14] *Id.* Exhibit I.

[15] *Id.* at 1–4.

On November 12, 2015, Bateman's supervisor gave him an "employee counseling form," essentially a disciplinary write-up, based on the supervisor's understanding that Bateman had complained after being assigned an editing task, slammed the door in the face of the Assistant News Director and Managing Editor, and left work with only half of the task completed.[16] Bateman disputes this characterization of the event. He contends that he did not slam the door in anyone's face and that he was unable to complete the editing task on schedule because the photographer who filmed the video that required editing "had double-punched the record button and had failed to shoot b-roll, rendering most of the video unusable."[17]

Also in November 2015, Bateman requested a personal day to spend time with his mother.[18] Bateman's supervisor informed him that he would need to find coverage for his shift in order to take that personal day.[19] Bateman did not do so.[20] Bateman called in sick on the requested day, citing trouble with his prosthesis.[21] He received another employee counseling form based on his improper use of a sick day in violation of Nexstar's attendance policy.[22] Bateman also disputes the characterization of this event. He contends that he experienced an irritated boil on his amputated leg, causing pain and preventing him from wearing his prosthesis, and so his sick day was for "legitimate medical reasons."[23]

---

[16] Motion Exhibit K, ECF No. 18-12, filed January 24, 2020.

[17] Opposition at 4.

[18] Motion Exhibit AA at ¶ 14; *see* Opposition at 4.

[19] Motion Exhibit AA at ¶ 14.

[20] *Id.*

[21] Opposition Exhibit 5 at ¶ 23.

[22] Motion Exhibit L, ECF No. 18-13, filed January 24, 2020.

[23] Opposition at 4.

In December 2015, Bateman received an employee evaluation containing positive and negative comments about his performance.[24] For example, the evaluation noted that Bateman was a "hard worker most of the time" and had "a good knowledge of his job."[25] It also noted that Bateman had "challenges effectively communicating his needs and frustrations with some co-workers and managers."[26]

In January 2016, after the station hired an additional photographer, Bateman received notice that he would be working a new schedule that met all of his requests—one with no turnarounds and two consecutive days (Saturday and Sunday) off.[27]

In April 2016, Bateman received an employee evaluation with positive remarks.[28] This evaluation noted that Bateman was "very good about helping out when asked" and that he was "dependable."[29]

In August 2016, a third-party complained about Bateman's unprofessional conduct as a photographer.[30] In his free time, Bateman had filmed videos at Rocky Mountain Raceway.[31] On one video, which he posted to YouTube, he inserted audio of a baby crying whenever a particular racecar passed the camera.[32] Bateman contends that this activity did not violate company policy,

---

[24] Motion Exhibit M, ECF No. 18-14, filed January 24, 2020.

[25] *Id.* at 1, 3.

[26] *Id.* at 2.

[27] *Id.* Exhibit N, ECF No. 18-15, filed January 24, 2020.

[28] *Id.* Exhibit O, ECF No. 18-16, filed January 24, 2020.

[29] Motion Exhibit O. at 1, 2.

[30] Opposition Exhibit 5 at ¶ 24.

[31] Motion Exhibit B, ECF No. 18-3, filed January 24, 2020, at 142.

[32] *Id.* at 141, 143.

but that "in order to avoid any appearance of unprofessionalism," he apologized to the complainant.[33]

In March 2017, Bateman received another employee counseling form and a one-day suspension.[34] This form and suspension were based on damage to a piece of equipment, assigned to Bateman, that fell from atop a vehicle where it had been placed to get a better signal, as well as the loss of a camera that was stolen when he left it unattended while on a job.[35] Bateman asserts that a supervisor instructed him to place the equipment on top of his vehicle, though he did not dispute that he failed to secure the equipment tightly and then left the equipment unattended.[36] Bateman did not dispute his loss of the camera.[37] The news director at the time responded in an email to Bateman's explanation of why he believed the discipline was unwarranted.[38] In the email, the news director detailed again the basis for the disciplinary action against Bateman.[39] He also noted that Bateman "deserve[d] a pat on the back for [a] number of things [Bateman had] done over the course of [his] employment with [the station]," was "a hard worker" "[f]or the most part," and had "gone the extra mile on other occasion[s] to the benefit of the station."[40]

---

[33] Opposition at 5; *see also id.* Exhibit 5 at ¶ 24; Motion Exhibit B at 146.

[34] Motion Exhibit P, ECF No. 18-17, filed January 24, 2020.

[35] *Id.*

[36] Opposition at 6.

[37] *Id.*

[38] Motion Exhibit Q, ECF No. 18-18, filed January 24, 2020.

[39] *Id.*

[40] *Id.*

In April 2017, Bateman received an employee performance evaluation with mostly positive remarks.[41] The evaluation noted that Bateman did "a good job of going after what he and his reporters need[ed] for the story," was "very good with his photography and editing skills," was "reliable to give [the station] a good product," and did "a good job of alerting managers and engineers of any problems or issues with his gear or assigned vehicle."[42] The evaluation did mention complaints about cigarette smell, concerns with damaged and lost property, and the need to maintain a positive attitude.[43]

In May 2017, another third-party complained about Bateman, this time alleging that he appeared to be under the influence of alcohol while working an event.[44] The employee counseling form noted that two complainants reported that Bateman smelled of alcohol, slurred his words, and stumbled.[45] It also stated that a station employee reported that Bateman had missed another assignment because he was hungover.[46] It further noted that Bateman smoked regularly and "often smell[ed] of cigarette smoke" and that the cigarette smoke odor was apparent on the day of the event.[47] The form indicated that Bateman needed to undergo a thirty-day probation, and it identified as goals for the probationary period that Bateman should improve his "personal appearance and hygiene—dress professionally for his assignments in clean appearing and smelling clothing" and should "[p]erform at an exemplary standard without

---

[41] Motion Exhibit R, ECF No. 18-19, filed January 24, 2020.

[42] *Id.* at 1–2.

[43] *Id.*

[44] *Id.* Exhibit S, ECF No. 18-20, filed January 24, 2020.

[45] *Id.*

[46] *Id*.

[47] Motion Exhibit S.

complaints from colleagues, subjects of his assignments or management."[48] Bateman avers that he was not under the influence of alcohol during the work assignment and that "the accusation may have been based on the way he walks due to his prosthesis, as well as his speech impediment due to hearing loss in his left ear."[49]

 The week after Bateman received this employee counseling form, he gave notice that he would resign two weeks later.[50] Bateman completed his final two weeks—half of the probation period—without incident.[51] On June 1, 2017, less than two weeks after he resigned, Bateman asked for his job back. His email stated "[t]he decision I made to resign was one of the most difficult decisions that I'd ever made in my life."[52] He asked to be considered "favorable to come back on board" and, in asking for the news director's response, noted that he would "never be more grateful to any soul."[53] The news director responded that Bateman's former position had been filled and included a link to a job posting for an available part-time position.[54] Bateman did not apply for that position.[55]

 Bateman filed a charge of discrimination with the Utah Antidiscrimination and Labor Division and EEOC on October 12, 2017, and he received a notice of right to sue.[56]

---

[48] *Id.*

[49] Opposition at 7.

[50] Motion Exhibit T, ECF No. 18-21, filed January 24, 2020.

[51] *See id.* Exhibit B at 61.

[52] *Id.* Exhibit W, ECF No. 18-24, filed January 24, 2020.

[53] *Id.*

[54] *Id.*

[55] *Id.* Exhibit B at 101–05.

[56] Complaint at ¶ 4.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[57] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[58] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[59] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[60]

## DISCUSSION

Nexstar moves for summary judgment on Bateman's unlawful termination and unlawful retaliation claims because the undisputed material facts show that Bateman voluntarily resigned from his employment and that Nexstar did not take any adverse employment action against Bateman based on his disability or protected activity.[61] The court first addresses Bateman's unlawful termination claim and then addresses his unlawful retaliation claim.

### Bateman's Employer Did Not Unlawfully Terminate Him by Constructive Discharge

To establish a prima facie case of unlawful termination under the ADA, a plaintiff must demonstrate that he (1) is a disabled person as defined by the ADA; (2) is qualified, with or

---

[57] Fed. R. Civ. P. 56(a).

[58] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[59] *Id.*

[60] *Id.* at 670–71.

[61] Motion at 1.

without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) was terminated by an employer or prospective employer under circumstances giving rise to the inference that the termination was because of that disability.[62] For purposes of the motion for summary judgment, Nexstar does not dispute the first two elements.[63] At issue is the remaining element—whether Bateman's employer terminated him because of his disability.

*Bateman Has Failed to Establish an Inference of Discrimination*

Bateman asserts that he has presented sufficient evidence to give rise to an inference that the disciplinary actions taken against him resulted in his constructive discharge based on his disability.[64] Though Bateman does not cite to this evidence, he refers to the disciplinary actions taken against him.[65] The facts surrounding these disciplinary actions do not give rise to an inference of discrimination based on Bateman's disability. Each disciplinary action responds to a particular incident or complaint unrelated to Bateman's disability. Moreover, there are multiple intervening positive events, which further negate any inference of discrimination.

Bateman's first November 2015 employee counseling form was based on his supervisor's understanding that Bateman had complained after being assigned an editing task, slammed the door in the face of the Assistant News Director and Managing Editor, and left work with only half of the task completed.[66] Even though Bateman disputes the characterization of this event,

---

[62] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[63] Motion at 29 n.11.

[64] Opposition at 22.

[65] *Id.*

[66] Motion Exhibit K.

the supervisor issued Bateman the employee counseling form based on a reason unrelated to Bateman's disability.

Bateman's second November 2015 employee counseling form was based on what appeared to his supervisors to be the improper use of a sick day in violation of the company's attendance policy.[67] Bateman contends that he used his sick day legitimately,[68] but his disagreement does not mean that his supervisors based the disciplinary action taken against him on his disability.

After these two disciplinary actions, which both resulted from specific events unrelated to Bateman's disability, Bateman received a mixed performance evaluation.[69] This evaluation included both positive and negative comments about Bateman's performance.[70] At the end of January 2016, Bateman received notice that beginning the following week he would be working his preferred schedule.[71] Then in April 2016, Bateman received an employee performance evaluation with positive remarks.[72] These instances are positive intervening events.

The following year, in March 2017, Bateman received another employee counseling form and one-day suspension based on damage to equipment, assigned to Bateman, that fell from atop a vehicle where it had been placed to get a better signal and based on a camera, provided to Bateman, that was stolen when he left it unattended while on a job.[73] Again, Bateman contends

---

[67] *Id.* Exhibit L.

[68] Opposition at 4.

[69] *See* Motion Exhibit M.

[70] *Id.*

[71] *Id.* Exhibit N.

[72] *Id.* Exhibit O.

[73] *Id.* Exhibit P.

that this disciplinary action was unwarranted,[74] but his disagreement with the reason for the disciplinary action does not mean that the disciplinary action was based on his disability. In an email responding to Bateman's explanation of the incident, the news director explained the basis for the disciplinary action and also provided Bateman with some positive feedback.[75] The following month Bateman received another employee performance evaluation with multiple positive comments.[76]

Finally, Bateman received an employee counseling form and thirty-day probation based on a third-party complaint that Bateman was intoxicated while working an event.[77] Bateman contends that the third-party may have misinterpreted the way he walks due to his prosthesis and his speech impediment as intoxication.[78] However, his contention does not account for the reported smell of alcohol[79] and, in any event, does not mean that his supervisors issued the disciplinary action against him based on his disability.

Each of these disciplinary actions are tied to a specific event warranting disciplinary action and thus do not give rise to an inference of discrimination. Moreover, the intervening positive events make an inference of discrimination even more improbable. Finally, Bateman simply fails to cite any evidence that suggests he was treated differently and worse than others because of his disability. Bateman's unlawful termination claim fails on the third prong because

---

[74] Opposition at 6.

[75] Motion Exhibit Q.

[76] *Id.* Exhibit R.

[77] *Id.* Exhibit S.

[78] Opposition at 7.

[79] *See* Motion Exhibit S.

Bateman has not shown circumstances giving rise to the inference that his termination by constructive discharge was because of his disability. Thus, he has not demonstrated a prima facie case for a claim of unlawful termination and his claim fails as a matter of law.

*Bateman Has Failed to Establish Pretext Under the Burden-Shifting Analysis*

Bateman has failed to establish a prima facie case for unlawful termination, but assuming he had, his unlawful termination claim would fail under the *McDonnell Douglas* burden-shifting analysis. Once the plaintiff establishes the prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action.[80] Upon the employer articulating a nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the reason articulated is a "pretext masking discriminatory animus."[81]

Nexstar has articulated nondiscriminatory reasons for each of the disciplinary actions taken against Bateman. First, in response to Bateman's assertion that his supervisor gave him a schedule with a turnaround when other similarly-situated employees were given schedules without turnarounds, Nexstar contends that Bateman's supervisor had to balance the needs of multiple photographers and did so by implementing the schedule that satisfied more of Bateman's requests.[82] This reason is nondiscriminatory. Second, Nexstar asserts that Bateman's first November 2015 employee counseling form resulted from what Bateman's supervisor understood to be Bateman slamming a door, failing to complete a task, and having a negative attitude.[83] The reason for this employee counseling form is nondiscriminatory. Third, Nexstar

---

[80] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Piercy*, 480 F.3d at 1198.

[81] *Piercy*, 480 F.3d at 1198.

[82] Reply at 4–5.

[83] *Id.* at 6; Motion Exhibit K.

contends that Bateman's second November 2015 employee counseling form was due to what Bateman's supervisor understood to be a violation of the company's attendance policy.[84] This reason is again nondiscriminatory. Fourth, Nexstar asserts that Bateman's March 2017 employee counseling form and one-day suspension resulted from damage to company property in his care.[85] This articulated basis for the disciplinary action is nondiscriminatory. And fifth, Nexstar asserts that Bateman's May 2017 employee counseling form and thirty-day probation was due to a third-party complaint that Bateman was intoxicated while working.[86] Again, this articulated reason is nondiscriminatory. Bateman's disagreement with the basis for the disciplinary actions taken against him does not negate that Nexstar has articulated nondiscriminatory reasons for each action.

Because Nexstar articulated nondiscriminatory reasons for each of the disciplinary actions taken against Bateman, the burden shifts back to Bateman to demonstrate that these are pretextual reasons masking discriminatory animus.[87]

A plaintiff can show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[88]

---

[84] Reply at 7; Motion Exhibit L.

[85] Reply at 8; Motion Exhibit P.

[86] Reply at 11; Motion Exhibit S.

[87] *See Piercy*, 480 F.3d at 1198.

[88] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Conjecture is not enough for a plaintiff to survive summary judgment.[89] Further, "[i]n determining whether the proffered reason for the decision was pretextual, [courts] examine the facts as they appear *to the person making the decision*."[90]

Bateman points the court to three pieces of evidence to show pretext.[91] First, Bateman contends that his schedule resulting from a shortage in photographers is pretext because other photographers worked schedules without turnarounds.[92] This reasoning fails to demonstrate pretext because it does not take into account that other photographers did work at least some turnaround shifts.[93] It also does not take into account that Bateman's supervisor had to balance the needs of multiple photographers and gave Bateman the schedule that he thought best accommodated Bateman's requests.[94] Second, Bateman argues that the nondiscriminatory reasons given for the disciplinary actions are pretextual because he has presented evidence showing that the discipline was unwarranted.[95] Notably, Bateman does not cite this evidence.[96] Further, when determining pretext the court examines the facts as they appear to the person making the decision, which here would be Bateman's supervisors. Bateman's disagreement with the disciplinary action does not demonstrate pretext. Finally, Bateman asserts that he was subjected to a pattern of discipline in excess of the discipline to which non-disabled

---

[89] *See id.*

[90] *CR England Inc.*, 644 F.3d at 1044.

[91] *See* Opposition at 14 n.1, 22–24.

[92] *Id.* at 23.

[93] *See, e.g.*, Motion Exhibit Y, ECF No. 18-26, filed January 24, 2020, at 10–11, 13–14, 69–70, 76–77.

[94] *Id.* Exhibit I.

[95] Opposition at 23.

[96] *See id.*

photographers were subjected.[97] Bateman asserts that only one written reprimand was issued to a photographer other than himself, though again he does not cite this evidence.[98] Bateman also does not provide evidence that other photographers engaged in behavior that warranted discipline.[99] That other photographers were not disciplined does not, on its own, demonstrate that Nexstar's articulated nondiscriminatory reasons for taking disciplinary action against Bateman are pretextual. So even if Bateman established a prima facie case for unlawful retaliation, which he did not, his claim would fail under the burden-shifting analysis.

*Bateman Cannot Establish Termination by Constructive Discharge*

Even if Bateman could establish an inference of discrimination, or could establish that his employer's articulated nondiscriminatory reasons for the disciplinary action taken against him were pretextual, his unlawful termination claim would still fail based on his contention that he was terminated by constructive discharge[100] because he cannot satisfy the required elements. Constructive discharge requires that (1) the plaintiff's employer discriminated against the plaintiff to the point where a reasonable person in the plaintiff's position would have felt compelled to resign, and (2) the plaintiff actually resigned.[101]

The parties do not dispute the second element—that Bateman actually resigned,[102] so the question is whether Nexstar discriminated against Bateman to the point where a reasonable

---

[97] *Id.* at 23–24.

[98] *Id.* at 24.

[99] The court notes that it appears that Bateman did not conduct any depositions to develop an evidentiary record on this point.

[100] Complaint at ¶ 33; Opposition at 20–22.

[101] *Rivero v. Bd. Of Regents of Univ. of N.M.*, 950 F.3d 754, 761 (10th Cir. 2020).

[102] *See* Complaint at ¶ 33.

person in Bateman's position would have felt compelled to resign. Bateman contends that his supervisors placed him on probation with the intention of terminating him at the conclusion of that probation "demonstrated by the fact that they provided [him] with no explanation of how he could successfully complete the probationary period."[103] However, the May 2017 employee counseling form placing Bateman on probation identifies two specific goals for his probationary period: (1) "Improve personal appearance and hygiene—dress professionally for his assignments in clean appearing and smelling clothing" and (2) "Perform at an exemplary standard without complaints from colleagues, subjects of his assignments or management."[104] These goals indicate that there was indeed some way Bateman could successfully complete probation, meaning that he had an option other than to resign. Moreover, Bateman has failed to show that he experienced any discrimination based on disability at all, much less discrimination so severe that an objective person would conclude that they had "no choice" but to quit.[105]

Further cutting against Bateman's constructive discharge argument is his request for re-employment.[106] Had the alleged discrimination been so egregious that a reasonable person would have felt compelled to resign, it does not follow that a reasonable person would then, almost immediately, ask for that job back. Bateman gave his two-week notice at the beginning of what would have been his probation,[107] worked those two weeks (approximately half of the

---

[103] *Id.* at ¶ 30.

[104] Motion Exhibit S.

[105] *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000).

[106] *Id.* Exhibit W.

[107] *Id.* Exhibit T.

probationary period),[108] and then asked for his job back around the time that his probation would

have ended.[109] These undisputed facts are not consistent with his constructive discharge

argument. In all, the undisputed material facts demonstrate that Bateman's unlawful termination

claim fails as a matter of law: the facts do not give rise to an inference of any discrimination

based on disability, much less discrimination so severe that an objective person would have no

choice but to quit.[110] The court recognizes that Bateman may genuinely have felt aggrieved

because of his disagreements with others, but the test here is an objective one and even Bateman

himself, shortly after quitting, regretted "[t]he decision I made to resign" and said he would

"never be more grateful to any soul" if he were permitted to return.[111] Because the facts cannot

support a cause of action of unlawful termination, Nexstar's motion for summary judgment is

granted on this claim.

### Bateman's Employer Did Not Unlawfully Retaliate Against Bateman

To establish a prima facie case of unlawful retaliation under the ADA, a plaintiff must

demonstrate "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable

employee would have found the challenged action materially adverse, and (3) that a causal

connection existed between the protected activity and the materially adverse action."[112]

For purposes of the motion for summary judgment, Nexstar does not dispute that

Bateman engaged in protected opposition to discrimination when he addressed his scheduling

---

[108] *Id.* Exhibit B at 46.

[109] *Id.* Exhibit W.

[110] *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997); *see also Heno*, 208 F.3d at 858.

[111] Motion Exhibit W.

[112] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011) (citation omitted).

concerns with human resources in July 2015.[113] That leaves at issue the second element (adverse action) and the third element (causal connection).

*The Statute of Limitations Bars Reliance on the 2015 Disciplinary Actions*

To maintain a timely claim for unlawful retaliation under the ADA a plaintiff "must have filed an administrative charge within 300 days of the challenged employment action and have filed suit in federal court within ninety days of receiving the agency's right-to-sue letter."[114]

Here, the statute of limitations bars Bateman's reliance on the November 2015 employee counseling forms as challenged employment actions because he filed the claim on October 12, 2017, which is well over 300 days (almost two years) past when he received the November 2015 employee counseling forms. Bateman argues that the November 2015 disciplinary actions were part of a pattern of retaliation that culminated in his constructive discharge in May 2017, which is itself within the 300-day statute of limitations.[115] The record does not support Bateman's claim. As explained below, the record does not suggest any retaliation, much less a pattern of retaliation. Simply asserting that two or more actions are related cannot, without more, save time-barred claims from the statute of limitations. However, even if Bateman's reliance on the November 2015 employee counseling forms were timely, his unlawful termination claim would fail.

---

[113] Motion at 23 n.9.

[114] *Proctor v. United Parcel Service*, 502 F.3d 1200, 1206 (10th Cir. 2007).

[115] Opposition at 18–19.

*The 2017 Suspension and Probation Are Adverse Actions*

Bateman has to establish that his employer took adverse action against him. While the Tenth Circuit defines "adverse employment action" "liberally," the action needs to be more than a "mere inconvenience."[116] The action must constitute a significant change in employment status or cause a significant change to benefits.[117] Written reprimands, like the employee counseling forms Bateman received, can constitute adverse employment action if they are numerous and make it more likely that an employee will be terminated for a further infraction.[118] Written reprimands or warnings can also constitute adverse employment action if they have the effect of placing the employee's employment status immediately at risk.[119] Another way written reprimands can constitute adverse employment action is if they are part of a pattern of retaliation that culminates in the employee's termination.[120]

As explained above, the two written reprimands Bateman received in 2015 are time-barred. Also, neither of them had any effect on his pay, benefits, responsibilities, schedule, or any other significant aspect of his employment. The forms were prepared and the conduct was discussed with Bateman, but nothing about his employment changed.

The two 2017 reprimands were different. The March 2017 reprimand was accompanied by a one-day suspension. While this was short, it can be reasonably inferred that Bateman's employment status may have been immediately at risk. And the May 2017 reprimand, which was

---

[116] *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998).

[117] *See id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

[118] *See Roberts v. Roadway Express*, 149 F.3d 1098, 1104 (10th Cir. 1998).

[119] *See Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1224–25 (10th Cir. 2006), *abrogation on other grounds recognized by Bertsch v. Overstock.com*, 684 F.3d 1023 (10th Cir. 2012).

[120] *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1270 (10th Cir. 2005).

accompanied by the thirty-day probation, clearly carried risk of immediate termination if he did not successfully complete it. There is no evidence that any of the reprimands, the suspension, or the probation fit a pattern or are related in any way. All four events deal with unrelated incidences involving the failure to complete an assignment, a failure to report for a shift, damage to and loss of company equipment, and a third-party report of intoxication on the job.[121] Intermixed with these events are some positive reviews and a positive schedule change.[122] There simply is no evidence of pattern. But the suspension and the probation qualify, for purposes of summary judgment, as adverse action.

*There Was No Causal Connection Between the Protected Activity and the Adverse Action*

The final element is the causal connection between the adverse action and the protected activity in which he engaged—his July 2015 complaint to human resources. "A 'causal connection' between a protected action and a subsequent adverse action can be shown through 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"[123] "[A]n adverse employment action that happened more than three months after the protected activity [is] not entitled to a presumption of causation."[124] If there is no temporal proximity to give rise to a presumption of causation, then a plaintiff may use additional evidence to establish causation.[125]

---

[121] Motion Exhibits K, L, P, S.

[122] *See id.* Exhibits M, N, O, R.

[123] *CR England*, 644 F.3d at 1051 (citation omitted).

[124] *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007).

[125] *See id.* at 1198–99.

As established above, the November 2015 employee counseling forms are time-barred and were not adverse actions. Even if that were not the case, Bateman received them more than three months after he engaged in protected activity, and so there is no presumption of causation. And when not considering the November 2015 employee counseling forms, the gap between the July 2015 protected activity and the 2017 suspension and later probation is about a year-and-a-half. That temporal gap is far too large to give rise to a presumption of causation. Moreover, as discussed above, there were several intervening positive events such as performance reviews with positive feedback, a desired schedule change, and other positive feedback from Bateman's supervisors that undercut the claim of retaliation.[126]

In any event, even considering the November 2015 employee counseling forms as adverse action, Bateman would have to rely on additional evidence to establish a causal connection. Bateman contends that he has provided evidence to establish causation, but he has not cited this evidence and there is no apparent evidence in the record before the court that supports a causal connection. The lack of evidence, the large temporal gap, and the intervening positive events necessitate the court's conclusion that there is no causal connection between Bateman's protected activity and any of the disciplinary actions taken against him. Based on the undisputed material facts, Bateman's unlawful retaliation claim fails as a matter of law on the causal connection element.

---

[126] *See* Motion Exhibits M, N, O, Q, R.

*Bateman Failed to Establish Pretext Under the Burden-Shifting Analysis*

Bateman has failed to establish a prima facie case for unlawful retaliation, but assuming he had, his unlawful retaliation claim would fail under the *McDonnell Douglas* burden-shifting analysis described above with respect to Bateman's unlawful termination claim.

As stated above, Nexstar has articulated nondiscriminatory reasons for each of the disciplinary actions taken against Bateman. Bateman's schedule with a turnaround shift was a result of Bateman's supervisor balancing the needs of multiple photographers and giving Bateman the schedule that satisfied more of Bateman's requests.[127] Bateman's first November 2015 employee counseling form resulted from what Bateman's supervisor understood to be Bateman slamming a door, failing to complete a task, and having a negative attitude.[128] Bateman's second November 2015 employee counseling form was issued on the basis of what appeared to Bateman's supervisor to be a fraudulent use of a sick day in violation of the company's attendance policy.[129] Bateman's March 2017 employee counseling form and one-day suspension resulted from damage to and loss of company property that occurred while the property was in Bateman's care.[130] Bateman's May 2017 employee counseling form and thirty-day probation resulted from a third-party complaint that Bateman was intoxicated while working an event.[131] These articulated reasons are all nondiscriminatory.

---

[127] Reply at 4–5.

[128] *Id.* at 6; Motion Exhibit K.

[129] Reply at 7; Motion Exhibit L.

[130] Reply at 8; Motion Exhibit P.

[131] Reply at 11; Motion Exhibit S.

The burden then shifts back to Bateman to demonstrate that these articulated reasons are pretextual, masking discriminatory animus.[132] The three pieces of evidence Bateman points to as showing pretext do not do so.[133] First, that Bateman had to work a turnaround schedule for several months does not demonstrate pretext: other photographers worked at least some turnaround shifts; Bateman's supervisor had to balance the needs of multiple photographers; and the schedule Bateman received accommodated Bateman's other requests.[134] Second, Bateman's disagreement with factually-supported employee counseling and disciplinary actions does not make them pretextual. Finally, Bateman does not provide evidence that other photographers engaged in behavior that warranted discipline, so he cannot show that Nexstar's nondiscriminatory reasons for taking disciplinary action against Bateman and supposedly not against other photographers are pretextual.[135] So even if Bateman had established a prima facie case for unlawful retaliation, his claim would fail under the burden-shifting analysis because he fails to cite evidence suggesting "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions"[136] in Defendant's explanations.

The undisputed material facts demonstrate that Bateman's claim for unlawful retaliation fails as a matter of law on the adverse action element and the causal connection element. Nexstar's motion for summary judgment is granted on this claim.

---

[132] *See Piercy*, 480 F.3d at 1198.

[133] *See* Opposition at 14 n.1, 22–24.

[134] *See, e.g.*, Motion Exhibit Y at 10–11, 13–14, 69–70, 76–77; *id.* Exhibit I.

[135] As the court noted above, it appears that Bateman did not conduct any depositions to develop an evidentiary record on this point.

[136] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

## CONCLUSION

Because the court concludes that Bateman's claims for unlawful termination and unlawful retaliation under the ADA fail as a matter of law based on the undisputed material facts, Defendant's Motion for Summary Judgment is GRANTED. The clerk of court is directed to close this case.

Signed October 8, 2020.

BY THE COURT

_____
David Barlow
United States District Judge